## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) CRIMINAL NO. 3:2007-21 |
| v. | ) |
| | ) |
| ABDUL KAREEM JONES, | ) |
| | ) JUDGE GIBSON |
| Defendant. | ) |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

This matter comes before the Court on Abdul Kareem Jones's (hereinafter "Defendant") Motion to Suppress Physical Evidence (Document No. 28) filed on December 28, 2007. The Government filed a response to this motion on January 14, 2008. (Document No. 34). The Defendant was indicted for unlawful possession of firearms and unlawful possession of ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) and §§ 922(g)(2) and 924 (e)(1) respectively. This Court possesses subject matter jurisdiction over these alleged offenses pursuant to 18 U.S.C. § 3231. Venue is proper in this judicial district in accordance with Federal Rule of Criminal Procedure 18.

A hearing on the motion to suppress was scheduled for February 28, 2008, but was continued due to the unavailability of an essential government witness who was serving a military tour of duty in Iraq until April 2008. *See* Document No. 36. After conducting an evidentiary hearing on the Defendant's Motion on April 1, 2008 which continued and concluded on April 15, 2008, the Court directed the parties to submit proposed findings of fact and conclusions of law based upon the evidence presented at the hearing. The Defendant submitted his proposed findings of fact and conclusions of law by brief on June 19, 2008 (Document No. 49) and the Government submitted a Post-Hearing Brief

(Document No. 50) on June 20, 2008. An initial review of the record and the parties' briefs suggested

that legal issues not previously addressed required further briefing in order for the Court to properly

perform its determination of whether the search warrants and the accompanying affidavits of probable

cause provided a substantial basis for the issuing magistrate to conclude that probable cause existed.

The issues left unaddressed by the parties were directed to be briefed by the Court pursuant to the Order

of Court dated June 27, 2008 (Document No. 51). The Defendant filed his brief on July 23, 2008

(Document No. 52)[1] and the Government filed its "Post Hearing Brief ...on Specified Issues" on July

28, 2008 (Document No. 53). After a review of the transcripts and the submissions of the parties, the

Court sets forth the following findings of fact and conclusions of law.

---

[1]The Court's Order framed the issues as follows:

1. Whether there was a substantial basis for the magistrate to conclude that the contents within the "four corners" of the affidavits of probable cause found at Government Exhibits 1 (search of the residence of Rear 810 Central Avenue) and 2 (search of the 1998 Ford and the 1991 Acura) establish probable cause that the Defendant was committing or had committed acts in violation of 18 Pa.C.S.A. § 6105, specifically:

   A. Did Detective Haymaker's knowledge and sworn statement that the Defendant was convicted of an unspecified felony in New Jersey sufficiently establish that a violation of 18 Pa.C.S.A. § 6105 has occurred, *i.e.* is the failure to specify the charge of conviction within the affidavits of probable cause fatal to the search warrants because without such information a magistrate cannot be satisfied that a necessary conviction set forth in 18 Pa.C.S.A. § 6105(b) exists?

   B. Did Detective Haymaker's failure to set forth within the affidavits of probable cause that the Defendant was subject to a protection from abuse order under Pennsylvania law preclude him from searching for ammunition pursuant to 18 Pa.C.S.A. § 6105, and if so, are the search warrants, as approved by the magistrate and set forth in Government Exhibits 1 and 2, overbroad and the evidence seized subject to suppression?

2. If a substantial basis is found to be lacking, does the good faith exception apply to prevent suppression of the evidence seized or does one of the four exceptions set forth in *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001) apply to overcome the good faith exception?

## FINDINGS OF FACT

1. On February 18, 2007, the Defendant was at the Sheetz convenience store on Central Avenue in Johnstown when he became involved in an altercation with another man; a Johnstown police officer, Patrolman Charles Nagle, arrived on the scene and told the Defendant that he would be cited for his actions and the Defendant was thereafter permitted to leave after it was confirmed that there were no outstanding warrants for his arrest. Transcript of April 1, 2008 (Document No. 43)(hereinafter "T."), pp. 86-87; Transcript of April 15, 2008 (Document No. 44)(hereinafter "T.2"), pp. 32-33.

2. Officer Nagle subsequently viewed the video footage from Sheetz of that evening's events and determined that a felony charge against the Defendant was appropriate rather than a citation for summary disorderly conduct; the felony charge for riot was filed that same night. T.2, pp. 34, 46; Defendant's Exhibit A.

3. On February 22, 2007, Detective Haymaker (hereinafter "Haymaker") and Detective Robertson (hereinafter "Robertson") of the Johnstown Police Department were present at Magistrate Grecek's office concerning matters unrelated to the Defendant, but while present there they volunteered to execute two arrest warrants for the Defendant provided by the magistrate. T., pp. 5-6, 50, 70-71, 77-78; T.2, pp. 43-44.

4. One of the arrest warrants originated from the magistrate's office based upon the Defendant's failure to appear at a hearing and the other originated from the Cambria County Office of Probation and Parole; Haymaker and Robertson set out to serve the warrants at the Defendant's residence because they knew where he lived. T., pp. 5-6, 70-71; Government Exhibit 1; T.2, pp. 43-44.

5. Haymaker knew of the Defendant's address because of his previous investigation of the Defendant and it was also set forth in one of the arrest warrants. T., pp. 29-30; Government Exhibits 1, 2.

6. Upon Haymaker and Robertson's arrival at the Defendant's residence, Rear 810 Central Avenue Johnstown, Pennsylvania, they recognized two vehicles "parked adjacent to R 810 Central Avenue", a 1991 blue Acura and a 1998 Ford Expedition; it was known to the Detectives prior to a search of the vehicles later that day that both of these vehicles were operated by the Defendant, but the Ford was owned by Marcia Williams, whereas the Acura was owned by the Defendant. T., pp. 6-7, 32, 71; Government's Exhibit 2.

7. Haymaker then approached the front door of Rear 810 Central Avenue while Robertson approached the back door; the detectives requested additional officers to assist them but they had not yet arrived. T., pp. 7, 71.

3

8. Haymaker was not in uniform, but dressed in a suit and tie and was wearing a gold policeman's badge, but it is unknown whether the badge was around his neck, hanging at his chest or attached to his belt; Robertson also was not dressed in a uniform. T., pp. 44-45.

9. After approaching the front door, Haymaker recognized coaxial cable running from the area of the front door that was affixed to the house and connected to a camera situated behind him and directed at the front door T., p. 7.

10. Through a police radio, Haymaker alerted Robertson to the fact that he noticed the camera at the front door and Robertson related that he also noticed one at the rear of the residence. T., pp. 9, 71.

11. Haymaker then knocked at the front door, indicated that it was the police and referred to the Defendant by name and requested that he approach the front door. T., pp. 9, 45-46.

12. In response, a male voice, which Haymaker recognized as the Defendant's voice, asked who was at the door to which Haymaker again identified himself as the police and requested the Defendant by his name to approach the front door; Robertson also recognized the Defendant's voice. T., pp. 10, 72.

13. Haymaker knocked and announced his presence again calling the Defendant's name and then Haymaker recognized a black male standing three to four feet behind the door through a "sheer curtain" hanging in the door's window; Haymaker continued to knock and called to the Defendant by name requesting him to approach the door and then radioed Robertson as to what was happening and also requested the additional officers to respond "a little bit faster." T., pp. 10-11.

14. Haymaker indicated that he called for Jones and announced his presence, but he did not announce that he had an arrest warrant for Jones. T., pp. 46-47, 68, 79, 89.

15. Based upon all of these circumstances, including the presence of a black male, the Defendant's voice, the presence of the vehicles known to be operated by the Defendant, the camera directed at the front door and Haymaker not knowing what the black male was doing behind the door, Haymaker kicked the front door in order to "breach" it. T., p. 11.

16. After kicking at the door "three or four times while announcing it was the police to answer the door [the Defendant] actually came over and unlocked the door and opened the door." T., pp. 11, 48.

17. Haymaker then ordered the Defendant to "get down on the ground" and then Haymaker handcuffed the Defendant who was in a kneeling position; the Defendant was dressed only in

4

a "T-shirt, boxer shorts and...socks." T., pp. 11-12, 80, 90.

18. Robertson thereafter entered through the front door and both detectives asked if any other individuals were in the residence and the Defendant stated his "girlfriend"; Robertson yelled for this individual while he walked to the second floor and the Defendant's girlfriend, Heather McClain (hereinafter "McClain"), met him on the stairway. T., pp. 12, 73, 90; T.2, p. 4.

19. The detectives seated the Defendant and McClain in chairs at the kitchen table and Robertson conducted a "protective sweep" of the residence, but found no other persons present. T., pp. 12-13, 73, 74, 80-81, 91; T.2, p. 4.

20. While seated in the kitchen, the Defendant was informed that he was under arrest based upon the two arrest warrants the detectives had been given by the magistrate. T., pp. 14, 74.

21. When the Defendant requested that he be allowed to have other clothes retrieved for him, the detectives agreed and Haymaker followed McClain upstairs and she obtained sweat pants, boots and socks from the bedroom floor beside the bed for the Defendant and Haymaker searched the clothes. T., pp. 14-15, 74; T.2, p. 5.

22. The Defendant was "unhandcuffed" and began to dress, but then indicated that he wanted "blue jeans" not "sweat pants" so Haymaker followed McClain again to the bedroom where she obtained a pair of "blue jeans" from the opposite side of the bedroom floor; Haymaker searched them and they proceed downstairs to the kitchen where the Defendant put them on. T., pp. 15-16, 74-75.

23. Defendant then requested McClain to obtain money from his "red shirt or a red jacket inside the closet" because he did not want it left in the residence; Haymaker did not object and followed McClain upstairs again and she went back into the bedroom, "open[ed] the closet door and start[ed] rifling through a bunch of clothing that was hanging in the closet." T., pp. 16, 75; T.2, p. 6.

24. Haymaker was "an arm's length away when she open[ed] the closet door" and while it was open Haymaker noticed "a box of .38 caliber, .38 special ammunition" under a stack of "ten or fifteen baseball hats"; Haymaker at this time was aware that the "[Defendant] is a convicted felon and he is not to possess a firearm." T., p. 16.

25. Haymaker did not open the box and did not know if it was empty or not; Haymaker did not ask McClain if any ammunition was in the box or if the ammunition belonged to the Defendant. T., pp. 58, 60-61.

5

26. Next, Haymaker ordered McClain to stop looking for the Defendant's money, and then yelled downstairs to the Defendant asking him if he is "a convicted felon" to which the Defendant voluntarily responded in the affirmative;[2] Haymaker then escorted McClain downstairs. T., pp. 16, 75, 93.

27. Haymaker had known that the Defendant was a convicted felon before he asked him the same. T., p. 17.

28. Haymaker then told the Defendant that he saw the box of ammunition and then told the Defendant that he would seek a search warrant for the residence. T., pp. 17, 82.

29. A uniformed officer was called and he took the Defendant to Magistrate Grecek's office for processing with respect to the two arrest warrants and Haymaker escorted McClain to the "Public Safety Building to interview her and to start on the search warrant, and [contact] A.D.A. Mike Carbonari for the request for the search warrant." T., pp. 17, 75.

30. Based upon Haymaker's observation of the ammunition box and his knowledge of the Defendant's status as a convicted felon, he applied for a search warrant of the residence to search for "Weapons and ammunition, proof of residency and ownership, fruit of a crime, contraband." Government Exhibit 1.

31. McClain was taken to the Public Safety Building while applications for search warrants were prepared for the vehicles and Rear 810 Central Avenue. T.2, pp. 6-7, 18-19.

32. The Defendant telephoned McClain on her cell phone while she was being transported to the Public Safety Building and the Defendant told her that there were guns in the Ford. T.2, p. 19.

33. McClain was mirandized prior to being interviewed. T.2, pp. 10, 21-22; Government Exhibit 3.

34. Despite never seeing them, McClain told Detective Sergeant Owens that there were guns in the Ford and McClain only knew this because the Defendant telephoned her while she was being

---

[2] By yelling down to Jones, Haymaker's intent was twofold: "One to verify that what I already knew and, two, I could let Robertson know that I saw something that wasn't right, that to heighten his state of alert because of my line of questioning." T., p. 58. However, as will be explored in the conclusions of law, this questioning qualifies as custodial interrogation in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966), and the Defendant's response is not admissible against him in the Government's case-in-chief at trial. According to Robertson, Haymaker also yelled to the Defendant in asking him "why do you have .38 caliber bullets in your closet." T., p. 75. The Defendant remained silent in response. *Id.* If this in fact occurred, it too is improper questioning of the Defendant in violation of *Miranda*. The Court does not comment on whether the silence was an invocation of the privilege against self-incrimination or a tacit admission, but if considered a tacit admission it is an admission in violation of *Miranda*.

6

transported to the Public Safety Building and told her there were guns in the Ford; McClain also falsely stated that she in fact saw them once when in fact she had never seen the Defendant possess any firearm, but McClain offered this partially false information because she feared being arrested at that time while she was pregnant. T.2, pp. 10-11, 27-28.

35. However, McClain was being truthful when she indicated that firearms would be found in the Ford. T.2, pp. 19-20, 22.

36. While being interviewed, McClain indicated to Detective Sergeant Owens that she saw the Defendant in possession of "a gun the night before and she believes it may be housed in one of the cars"; Haymaker applied for two separate warrants: one for the residence at Rear 810 Central Avenue and one for both the 1991 Acura and the 1998 Ford. T., pp. 18-20; Government Exhibits 1 and 2.[3]

37. The search warrants were obtained and executed around 6:55 p.m. that same day and as a result of the search of the residence a digital scale with a "K" "hand carved" on the underside of it, a copy of the magazine "Don Diva", a publication that "promotes illegal narcotic activity", "owe sheets", the box of .38 caliber ammunition which was five rounds short of being full and $2080 in cash, all in twenty dollar bills were found. T., pp. 20-22.

38. The execution of the warrant labeled Government Exhibit 2 upon the two vehicles, the Acura and the Ford, resulted in the discovery and seizure from the rear of the Ford a .40 caliber "semiautomatic handgun" (reported stolen) and "loaded with 11 rounds of .40 caliber ammunition" from a "black...nylon gym bag", and a second bag within the black nylon bag contained a .38 caliber handgun (reported stolen) and loaded with five rounds of Remington ammunition,...the exact same ammunition...found in the closet", a Highpoint nine millimeter handgun "loaded with eight rounds of ammunition," and a Fabric Arms .25 caliber automatic handgun "loaded with six rounds of ammunition." T., pp. 26-27.

39. Haymaker entered the rear hatch of the Ford by means of utilizing the vehicle's keys which were found inside the residence "in a bowl on the kitchen table"; it was one of two sets of keys, both with "remote entries" which when pushed indicate to the Ford and the Acura respectively by the lighting of the vehicle's lights. T., pp. 40-41.

40. The vehicles were searched after the search of the residence was completed. T., p. 41.

41. The Ford was "registered to Marcia Williams, the mother of the Defendant's children [and] it's frequently operated by Jones." T., pp. 6, 25.

---

[3]Government Exhibits 1 and 2, *i.e.* the search warrants in question, are appended to this Memorandum Opinion as Appendix 1 and Appendix 2.

42. All items seized were "packaged as evidence and...taken back to the Public Safety Building as evidence." T., p. 27.

43. Prior to the date of the execution of the search warrants, Haymaker had last seen the Defendant driving the Ford on December 19, 2006 when he cited him for illegal window tint. T., p. 39.

## CONCLUSIONS OF LAW

1. If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.

*Payton v. New York*, 445 U.S. 573, 602-603, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639, 660-661 (1980).

2. The Court of Appeals for the Third Circuit has attempted to follow *Payton, see United States v. Agnew*, 407 F.3d 193 (3d Cir. 2005), but officially has not concluded what the requisite measure of proof is in order to sufficiently establish the Defendant's presence in the dwelling:

> The Court in *Agnew* cited *Payton* as requiring a showing of probable cause before police may enter a dwelling in which a suspect is believed to be located. *Agnew*, 407 F.3d at 196. However, the express language of the Supreme Court in *Payton* was that there need only be "reason to believe" the suspect is within. *Payton*, 445 U.S. at 603. Obviously, this Court cannot change what the Supreme Court said and the Court in *Agnew* gave no explanation for citing *Payton* as requiring probable cause. We believe the reference to *Payton* as requiring a showing of probable cause was an error. This Court in *United States v. Veal*, 453 F.3d 164, 167 n. 3 (2006), recognized this potential error but, having found that the probable cause standard was met in that case, declined to further address the issue. Because this Court concludes that when they entered the police had both reason to believe and probable cause to believe that Porter was within Apartment C, we need not comment further. Other courts have held that probable cause is a more stringent standard. *See, e.g., United States v. Route*, 104 F.3d 59, 62 (5th Cir.1997); *United States v. Lauter*, 57 F.3d 212, 215 (2d Cir.1995) (noting that *Payton* requires only a "reasonable belief," which is a less stringent standard).

8

*U.S. v. Porter*, 2008 WL 2333074, at \*2, 2008 U.S. App. LEXIS 12375, at \* 7-8, n.3 (3d Cir. June 9, 2008).

3.   In following the less stringent standard set forth by the Supreme Court in *Payton* this Court concludes Haymaker had reason to believe that the Defendant was the man behind the front door in light of the fact that he called for the Defendant, he knew it was the Defendant's residence, he recognized his voice and the man Haymaker observed was of the same sex and race as the Defendant. *See* Finding(s) of Fact (hereinafter "FOF"), 4-5, 11-14.

4.   Therefore, in accordance with *Payton*, Haymaker's attempted entry was justified and complied with the Fourth Amendment.

5.   The determination of whether someone is "in custody" turns on the question of whether a reasonable man in the Defendant's position would feel he is deprived of his "freedom of movement." *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 1528-1529, 128 L.Ed.2d 293, 293-298 (1994); once inside Rear 810 Central Avenue, it is clear that Haymaker placed the Defendant under arrest based upon the fact of handcuffing the Defendant and informing him he was to be arrested based upon the two arrest warrants. *See* FOF 17, 20.

6.   There is no indication that McClain was placed under arrest while she was present at Rear 810 Central Avenue. *See* FOF 17-20.

7.   When Haymaker followed McClain upstairs the third time when she sought to retrieve the Defendant's money from his shirt, Haymaker saw in plain view a box with a label indicating it originally was intended to contain .38 caliber ammunition; Haymaker properly avoided opening the box without a search warrant, but in making that decision, he also lacked knowledge of the box's contents at that time. *See* FOF 23-26.

8.[4]   Since Haymaker and Robertson had the Defendant in custody after Haymaker's entry into Rear 810 Central Avenue, the Defendant was still in custody at the subsequent point when Haymaker

---

[4]Conclusions of Law 8 through 12 address an issue not raised by the parties: the contrast between the admissibility of statements under the Fifth Amendment privilege against self-incrimination and the utilization of the same statements in furtherance of a probable cause determination under the Fourth Amendment. The Court found it necessary to recognize that Haymaker did not violate the Fourth Amendment by the fact that he included matters within his affidavit of probable cause that would otherwise be inadmissible under the Fifth Amendment, even if that information solicited from the Defendant confirmed his recollection of the fact of a previous conviction.

9. "Thus, 'police officers are not required to administer *Miranda* warnings to everyone whom they question.' *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). *Miranda*, of course, requires warnings only when the person the police are questioning is in custody. *Miranda v. Arizona*, 384 U.S. 436, 468, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966)." *United States v. Willaman*, 437 F.3d 354, 359 (3d Cir. 2006).

10. "If *Miranda* warnings are not given before a person 'in custody' is questioned, evidence resulting from the questioning must be suppressed. *Miranda*, 384 U.S. at 444-45, 86 S.Ct. 1602." *United States v. Jacobs*, 431 F.3d 99, 104 (3d Cir. 2005)(footnote omitted).

11. Haymaker's inquiry to the Defendant regarding his criminal history was a custodial interrogation in violation of *Miranda* as neither Haymaker nor Robertson advised the Defendant of his *Miranda* warnings after they arrested him; therefore, use of the Defendant's voluntary indication that he is a convicted felon is inadmissible in the Government's case-in-chief at trial.

12. However, exclusion of an un-m irandized voluntary custodial statement for purposes of trial does not prevent the use of that statement for establishing probable cause under the Fourth Amendment; the exclusionary rule of the Fourth Amendment operates independently of the *Miranda* rule. *United States v. DeSumma*, 272 F.3d 176, 181 (3d Cir. 2001); *see also United States v. Patane* 542 U.S. 630, 639-640,124 S.Ct. 2620, 2627-2628, 159 L.Ed.2d 667, 676-677(2004) and 2 Wayne R. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment* § 3.2 (4ᵗʰ ed. 2004).

13. The Fourth Amendment to the United States Constitution reads: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.

14. "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)." *U.S. v. Grubbs*, 547 U.S. 90, 95, 126 S.Ct. 1494, 1499, 164 L.Ed.2d 195, 203 (2006).

10

15.	A magistrate judge may find probable cause when, viewing the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). This Court must uphold the finding if the affidavit on which it was based provided a substantial basis for finding probable cause. *See id.* at 236; *Conley*, 4 F.3d at 1205; *Jones*, 994 F.2d at 1054, 1055. The Court need not determine whether probable cause actually existed, but only whether there was "a 'substantial basis' for finding probable cause." *Jones*, 994 F.2d at 1054; *see id.* at 1055, 1057. In making this determination, the Court confines itself "to the facts that were before the magistrate judge, *i.e.*, the affidavit, and [does] not consider information from other portions of the record." *Id.* at 1055. "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* at 1057-58 (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)).

*U.S. v. Hodge*,  246 F.3d 301, 305 (3d Cir. 2001).

16.[5]	[E]vidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial. In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.

*Elkins v. United States,* 364 U.S. 206, 223-224, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669, 1681(1960)(footnote omitted). *See also United States v. Stiver*, 9 F.3d 298, 300 (3d Cir. 1993)(citing *United States v. Rickus*, 737 F.2d 360 (3d Cir. 1984)).

---

[5]Conclusions of Law 16 through 21 are direct quotations from this Court's recent opinion in *United States v. Diyn*, Criminal No. 3:2006-37, 2008 WL 2795942, at *5, 2008 U.S.Dist. LEXIS 54910, at * 15-16, 17-19 (W. D. Pa. July 18, 2008).

11

17.    This Court finds that in a suppression hearing context originating from the issuance of a state search warrant, a district court evaluates the presence of probable cause under the Fourth Amendment in an application for a search warrant and its accompanying affidavit of probable cause from a state judge by referring to the elements of the state crime at issue in the search warrant. *See United States v. Dimas*, 418 F.Supp.2d 737, 741-742 (W.D.Pa. 2005)(addressing probable cause in the context of a violation of the Pennsylvania Vehicle Code); *see also United States v. Primo*, 223 Fed. Appx. 187, 190-191 (3d Cir. 2007)(finding that police officers conduct violating state criminal *procedure* rule was irrelevant to the controlling Fourth Amendment analysis).

18.    [W]hen a prosecution begins with state law enforcement officers enforcing state criminal codes and alleging a state crime for which they submit their evidence of probable cause to a local magistrate in order to obtain a search warrant, they must establish probable cause to search for evidence of that crime in accordance with that state's constitutional criminal procedure as applied to the contents of the affidavit of probable cause for the search warrant[;] [w]hen that same prosecution is later adopted by a United States Attorney's Office for federal prosecution, for federal prosecutors to establish that any evidence seized under that state search warrant issued is properly admissible, the admissibility of the evidence must adhere to the standards applicable under the Fourth Amendment, including the presence of probable cause, set against the backdrop of the state crime.

19.    In order to establish the existence of probable cause and the proper issuance of a search warrant under the Fourth Amendment for any suppression issue in a pending federal prosecution that originated as a state prosecution, probable cause under the Fourth Amendment can only be measured against the alleged crimes that prompted the issuance of the search warrant under state law, not the alleged crimes set forth in the subsequent federal indictment, information, or complaint.

20.    To conclude to the contrary would require United States district courts to evaluate the presence of probable cause under the Fourth Amendment for the federal criminal allegations before them based upon a record that was initially developed for purposes of establishing the existence of a state criminal law violation.

21.    Such an evaluation would almost always result in suppression under the Fourth Amendment because applications for search warrants in state courts will not be tailored to establishing probable cause as to *federal* crimes, only state crimes and thus fail (except by happenstance) because the affidavits of probable cause/applications for search warrants will only address evidence sufficient to establish probable cause based upon the elements of state crimes.

12

22.    18 Pennsylvania Consolidated Statutes Annotated § 6105 reads in pertinent part:

(a) Offense defined.--

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

\*\*\*

(a.1) Penalty.--

(1) A person convicted of a felony enumerated under subsection (b) or a felony under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, or any equivalent Federal statute or equivalent statute of any other state, who violates subsection (a) commits a felony of the second degree.

(2) A person who is the subject of an active protection from abuse order issued pursuant to 23 Pa.C.S. § 6108 (relating to relief), which order provided for the relinquishment of firearms, other weapons or ammunition during the period of time the order is in effect, commits a misdemeanor of the first degree if he intentionally or knowingly fails to relinquish a firearm, other weapon or ammunition to the sheriff as required by the order unless, in lieu of relinquishment, he provides an affidavit which lists the firearms, other weapons or ammunition to the sheriff in accordance with either 23 Pa.C.S. § 6108(a)(7)(i)(B), 6108.2 (relating to relinquishment for consignment sale, lawful transfer or safekeeping) or 6108.3 (relating to relinquishment to third party for safekeeping).

\*\*\*

(b) Enumerated offenses.--The following offenses shall apply to subsection (a):

Section 908 (relating to prohibited offensive weapons).

Section 911 (relating to corrupt organizations).

Section 912 (relating to possession of weapon on school property).

Section 2502 (relating to murder).

Section 2503 (relating to voluntary manslaughter).

Section 2504 (relating to involuntary manslaughter) if the offense is based on the reckless use of a firearm.

Section 2702 (relating to aggravated assault).

Section 2703 (relating to assault by prisoner).

Section 2704 (relating to assault by life prisoner).

Section 2709.1 (relating to stalking).

Section 2716 (relating to weapons of mass destruction).

Section 2901 (relating to kidnapping).

Section 2902 (relating to unlawful restraint).

Section 2910 (relating to luring a child into a motor vehicle).

Section 3121 (relating to rape).

Section 3123 (relating to involuntary deviate sexual intercourse).

Section 3125 (relating to aggravated indecent assault).

Section 3301 (relating to arson and related offenses).

Section 3302 (relating to causing or risking catastrophe).

Section 3502 (relating to burglary).

Section 3503 (relating to criminal trespass) if the offense is graded a felony of the second degree or higher.

Section 3701 (relating to robbery).

Section 3702 (relating to robbery of motor vehicle).

Section 3921 (relating to theft by unlawful taking or disposition) upon conviction of the second felony offense.

Section 3923 (relating to theft by extortion) when the offense is accompanied by threats of violence.

Section 3925 (relating to receiving stolen property) upon conviction of the second felony offense.

Section 4912 (relating to impersonating a public servant) if the person is impersonating a law enforcement officer.

Section 4952 (relating to intimidation of witnesses or victims).

Section 4953 (relating to retaliation against witness or victim).

Section 5121 (relating to escape).

Section 5122 (relating to weapons or implements for escape).

14

Section 5501(3) (relating to riot).

Section 5515 (relating to prohibiting of paramilitary training).

Section 5516 (relating to facsimile weapons of mass destruction).

Section 6110.1 (relating to possession of firearm by minor).

Section 6301 (relating to corruption of minors).

Section 6302 (relating to sale or lease of weapons and explosives).

Any offense equivalent to any of the above-enumerated offenses under the prior laws of this Commonwealth or any offense equivalent to any of the above-enumerated offenses under the statutes of any other state or of the United States.

(c) Other persons.--In addition to any person who has been convicted of any offense listed under subsection (b), the following persons shall be subject to the prohibition of subsection (a):

\*\*\*

(2) A person who has been convicted of an offense under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, or any equivalent Federal statute or equivalent statute of any other state, that may be punishable by a term of imprisonment exceeding two years.

\*\*\*

(6) A person who is the subject of an active protection from abuse order issued pursuant to 23 Pa.C.S. § 6108, which order provided for the relinquishment of firearms during the period of time the order is in effect. This prohibition shall terminate upon the expiration or vacation of an active protection from abuse order or portion thereof relating to the relinquishment of firearms.

\*\*\*

(f) Other exemptions and proceedings.--

\*\*\*

(2) If application is made under this subsection for relief from the disability imposed under subsection (c)(6), notice of such application shall be given to the person who had petitioned for the protection from abuse order, and such person shall be a party to the proceedings. Notice of any court order or

15

amendment to a court order restoring firearms possession or control shall be given to the person who had petitioned for the protection from abuse order, to the sheriff and to the Pennsylvania State Police. The application and any proceedings on the application shall comply with 23 Pa.C.S. Ch. 61 (relating to protection from abuse).

(4)(iii) For purposes of this paragraph, the term "firearm" shall include any scope, sight, bipod, sling, light, magazine, clip, ammunition or other firearm accessory attached to or seized, confiscated or relinquished with a firearm.

\*\*\*

(i) Firearm.--As used in this section only, the term "firearm" shall include any weapons which are designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon.

18 Pa.C.S.A. § 6105(footnote omitted).

23.      "[D]irect evidence linking the place to be searched to the crime is not required for the issuance of a search warrant." *Conley*, 4 F.3d at 1207. "Instead, probable cause can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide'" the fruits of his crime. *Jones*, 994 F.2d 1051 (quoting *United States v. Jackson*, 756 F.2d 703, 705 (9th Cir.1985)). A court "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense."

*U.S. v. Hodge*, 246 F.3d 301, 305-306 (3d Cir. 2001).

24.      Turning to the search warrant and affidavit of probable cause at Government Exhibit 1, the Court notes that the possession of a box with a label indicating that it contains ammunition does not violate 18 Pa.C.S.A. § 6105 (Persons not to possess, use, manufacture, control sell or transfer firearms); likewise possession of ammunition does not violate 18 Pa.C.S.A. § 6105 unless the person is subject to a disability under that statute because of an active protection from abuse order against him.

16

25. The Government in its "Post Hearing Brief ...on Specified Issues" reminds this Court of the precedent of *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000)(internal citations omitted)("The supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner. Statements in an affidavit may not be read in isolation-the affidavit must be read as a whole.") and *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001)( "a reviewing court 'should focus not on what information an affidavit does not include [which may lead to improper de novo review], but rather on the information it does contain.'").

26. *Whitner* and *Hodge* work against the Government's position with respect to the search warrant for the residence at Rear 810 Central Avenue in that the warrant was approved to allow for a search for "Weapons and ammunition, proof of residency and ownership, fruits of a crime, contraband", *see* Government Exhibit 1, p. 1, but nothing in the warrant establishes that the Defendant is not permitted to possess "ammunition".

27. In accordance with *Whitner* and *Hodge*, the Court reads the warrant and its attached affidavit of probable cause in a commonsense and nontechnical manner without considering any information not included in the warrant: Haymaker alleges a violation of 18 Pa.C.S.A. § 6105, asserting that the Defendant is not permitted to possess ammunition because of his conviction for an unspecified felony in New Jersey. *See* Government Exhibit 1.

28. Specifically the warrant indicates that among the items to be searched for are "[w]eapons and ammunition..." *see* Government Exhibit 1, p. 1, but the basis for the search of Rear 810 Central Avenue was that it was the residence of the Defendant and according to the affidavit of probable cause, the Defendant "is a convicted felon from New Jersey and, therefore, is prohibited from having said ammunition." Government Exhibit 1, p. 5, ¶ 21.

29. Haymaker then wrote that he stated to "McCLAIN that JONES as [sic] a convicted felon and is not to posses [sic] a firearm" and concludes "[b]ased on the foregoing...there is reason to believe that ...R. 810 Central Ave may contain further evidence of firearms and ammunition which JONES is not permitted to possess under § 6105 Persons not to possess, use, manufacture, control, sell or transfer firearms." Government Exhibit 1, p. 5, ¶¶ 22 and final unnumbered paragraph.

30. For the first time in the Government's "Post Hearing Brief ...on Specified Issues" at page three the previously unnamed felony "Possession of Controlled Dangerous Substance with Intent to Distribute" was set forth in the Court's record, but the name of this New Jersey crime is not set forth in either Government Exhibits 1 or 2 and the Court may only consider what is within those

17

two exhibits for this issue. *See Hodge, supra* at Conclusion of Law 15.

31.     Therefore, this after-included fact cannot be considered by this Court at this juncture to save the search warrant at Government Exhibit 1 from its defect of being without a substantial basis of probable cause that, assuming the ammunition box contained ammunition, the Defendant's possession of the ammunition was prohibited. *Id.*

32.     Ammunition for firearms and firearms themselves by their nature and existence are not contraband or illegal under Pennsylvania law, unlike other matters such as child pornography, which is illegal no matter who possesses it; ammunition and firearms under Pennsylvania law, specifically 18 Pa.C.S.A. § 6105, only become illegal when possessed by one who is prohibited from possessing them.

33.     In Pennsylvania, in accordance with 18 Pa.C.S.A. § 6105(c)(6), possession of ammunition is a criminal act only for persons who are subject to an active protection from abuse order.[6]

34.     Therefore, in order for the ammunition sought in the search warrant at Government Exhibit 1 to be the proper subject of that warrant, the ammunition must be evidence of a crime or otherwise considered contraband; there is no allegation within the affidavit of probable cause of an outstanding protection from abuse order that existed against the Defendant at the time of the execution of the search warrant found at Government Exhibit 1.

35.     The search warrant at Government Exhibit 1 is based solely upon a violation of 18 Pa.C.S.A. § 6105 and therefore, there is no substantial basis to conclude that the purported ammunition alleged to be in the Defendant's possession was evidence of a crime or otherwise could be considered contraband pursuant to that statute.

36.     The Court's reading of the search warrant and affidavit of probable cause at Government Exhibit 1 is not a hypertechincal reading, but only a commonsense reading of the information

---

[6]The Court recognizes that the prohibition against possession of ammunition under 18 Pa.C.S.A. § 6105 is somewhat confusing considering the fact that "firearm" as defined in subsection (i) (excluding ammunition) appears to apply to the protection from abuse order prohibition's reference to firearm at subsection (c)(6). Nevertheless, the Court provides the benefit of the doubt to the Government by reading § 6105(c)(6) as including "ammunition" within the term "firearm" in that subsection. The intent in amending § 6105 to include provisions for protection from abuse orders appears to have been to include "ammunition" with the definition of "firearm" as reflected in the separate definition found in subsection (f)(4)(iii) and to consider "firearm" to include "ammunition" only when "firearm" is used with respect to prohibitions based upon a protection from abuse order. *See* Conclusion of Law 22, *supra*.

contained within the four corners of the affidavit of probable cause: for ammunition to be evidence of a crime or contraband in violation of 18 Pa.C.S.A. § 6105 because it is in the Defendant's possession, the Defendant must be subject to an active protection from abuse order.

37. The Court is not imposing a burdensome procedure or prerequisites upon police officers who are applying for search warrants that would be acceptable or understandable only to attorneys: Haymaker is a police officer within the City of Johnstown, Pennsylvania and is charged with enforcing the crimes code of Pennsylvania including 18 Pa.C.S.A. § 6105.

38. 18 Pa.C.S.A. § 6105 prohibits or otherwise disables only certain individuals from possessing firearms and another type of individual from possessing ammunition within Pennsylvania.

39. Haymaker did not confirm or even allege within the affidavit of probable cause at Government Exhibit 1 that an active protection from abuse order was entered against the Defendant; without such an order, ammunition in the possession of the Defendant is not transformed into contraband or evidence of a crime in accordance with 18 Pa.C.S.A. § 6105.[7]

40. Thus, without a substantial basis for the magistrate to conclude that the ammunition could be the subject of the search warrant, the search warrant was overbroad.

41. An overly broad warrant "describe[s] in both specific and inclusive generic terms what is to be seized," but it authorizes the seizure of items as to which there is no probable cause. *Christine*, 687 F.2d at 753-54. An overly broad warrant, however, can be cured by redaction, that is, by "striking from [the] warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those severable phrases and clauses that satisfy the Fourth Amendment." *Id.* at 754. Evidence seized pursuant to an overly broad warrant need not be suppressed if the good faith exception applies.

*U.S. v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 149 (3d Cir. 2002).

---

[7]Although it is possible that the presence of ammunition of a certain caliber may by itself establish probable cause to search for only a firearm of the same caliber, the Court does not reach that issue.

19

42. In following the *Ninety-Two Thousand* precedent, the Court must strike the reference to "ammunition" from the list of items sought and subject to seizure within the warrant as there was no probable cause to conclude that the Defendant's possession of the ammunition was contrary to Pennsylvania law.

43. While the search warrant at Government Exhibit 1 also sought "Weapons" for seizure, the search warrant was also without substantial basis to conclude that probable cause existed for the search and seizure of weapons based upon the same logic.

44. Returning again to Government Exhibit 1, Haymaker relied upon 18 Pa.C.S.A. § 6105 as indicating that persons convicted of certain offenses were prohibited from possessing firearms in Pennsylvania and Haymaker's allegation that the Defendant was "a convicted felon from New Jersey" (Government Exhibit 1, p. 5, ¶ 21) is insufficient to establish probable cause that any weapon in the possession of the Defendant was contraband.

45. Haymaker, as a police officer in Pennsylvania is charged with enforcing the provisions of 18 Pa.C.S.A. § 6105 and it is clear from the language in § 6105 that not all convictions result in a disability to possess a firearm.

46. The Government is correct that § 6105(c) provides additional convictions that result in a prohibition to possess firearms and the Court, while aware of subsection (c), failed to explicitly list this in its order specifying further issues for briefing. *See* Order of Court dated June 27, 2008; Government's Post Hearing Brief ...on Specified Issues, p. 3.

47. The Government, as mentioned previously, offers that the New Jersey felony which was not specified within the affidavit of probable cause was "Possession of Controlled Dangerous Substance with Intent to Distribute", *id.*, but this is not contained within the warrant and cannot be considered by the Court at this time, nor can the Court countenance any subjective belief by Haymaker that the New Jersey felony equated with one of the enumerated Pennsylvania offenses. *See* Conclusions of Law 30, 31, *supra*.

48. If 18 Pa.C.S.A. § 6105 prohibited possession of firearms by one who is convicted of *any* felony, the affidavit of probable cause submitted by Haymaker would be sufficient to establish probable cause, but this is not the law in Pennsylvania.

20

49.                In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

          'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' *McCarthy v. De Armit*, 99 Pa. 63, 69, quoted with approval in the *Carroll* opinion. 267 U.S. at page 161, 45 S.Ct. at page 288, 69 L.Ed. 543, 39 A.L.R. 790. And this 'means less than evidence which would justify condemnation' or conviction, as Marshall, C.J., said for the Court more than a century ago in *Locke v. United States*, 7 Cranch 339, 348, 3 L.Ed. 364. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 39 A.L.R. 790.

*Brinegar v. United States,* 338 U.S. 160, 175-176, 69 S.Ct. 1302, 1310-1311, 93 L.Ed. 1879, 1890 (1949)(footnotes omitted).

50.    "[I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527, 546 (1983)(citation omitted).

51.    Haymaker's failure to name the felony that the Defendant was convicted of within the affidavit of probable cause is fatal to establishing probable cause because it was a foreign conviction to Pennsylvania; this is so in light of the fact that § 6105 encompasses convictions from other states which are equivalent for listed Pennsylvania convictions and in the absence of knowledge of that conviction a magistrate could not determine if the foreign conviction was the equivalent of a Pennsylvania conviction for the crimes enumerated in subsections (b) or (c) of 18 Pa.C.S.A. § 6105.

52.    Without knowing what felony the Defendant was convicted of in New Jersey, the magistrate's knowledge that the conviction was classified as a felony does not increase the probability that a crime was committed or that evidence of a crime existed.

21

53. While the Government may be correct that the New Jersey conviction now known to this Court may suffice to be the equivalent to a conviction under the Pennsylvania Controlled Substance, Drug, Device, and Cosmetic Act if it was punishable by a term of imprisonment over two years, *see* 18 Pa.C.S.A. § 6105(c)(2), and Government's Post Hearing Brief ...on Specified Issues, p. 4, n. 2, there was no such information within the affidavit of probable cause and therefore no substantial basis for the magistrate to conclude that the Defendant was convicted of an offense that prohibited him from possessing a firearm pursuant to § 6105. *See also* Conclusions of Law 30, 31, 47.

54. Once again, this is the only commonsense reading of the affidavit of probable cause as Haymaker as a police officer is aware of the elements of a violation of 18 Pa.C.S.A. § 6105, and need not establish prima facie evidence of a violation of that section, but he must present a probability that evidence of the crime existed in the location to be searched and in the absence of that probable cause the Court cannot find a substantial basis for the magistrate's finding of probable cause despite the deferential review the Court must give to that finding.

55. Turning to the search warrant at Government Exhibit 2, the Court's analysis as to the ammunition sought to be seized under that warrant is the same as its analysis for the ammunition sought under the search warrant at Government Exhibit 1; both warrants present the same basis for the search for and seizure of the ammunition, but both fail to set forth the necessary prerequisite condition under 18 Pa.C.S.A. § 6105, that is the Defendant being subject to an active protection from abuse order. *See* Conclusions of Law 33-35.

56. Thus, the search warrant at Government Exhibit 2 is overbroad in that there was no probable cause to conclude that even if the Defendant possessed ammunition, that his possession was prohibited by 18 Pa.C.S.A. § 6105. *See* Conclusion of Law 42.

57. The reference to "ammunition" in the search warrant at Government Exhibit 2 is hereby ordered stricken as overbroad in accordance with *Ninety-Two Thousand*. *See* Conclusion of Law 42.

58. Likewise, the search warrant at Government Exhibit 2, similar to its companion at Government Exhibit 1, fails to allege which felony in New Jersey the Defendant was convicted of and without that information within the affidavit of probable cause there is no substantial basis for the magistrate's finding of probable cause. *See* Conclusion of Law 53.

59. Therefore, the search warrant at Government Exhibit 2 was also overbroad in seeking "Weapons" as the affidavit of probable cause did not establish probable cause to believe that the Defendant was prohibited from possessing firearms and thus "Weapons" must be stricken

from the search warrant as overbroad. *See Ninety-Two Thousand, supra.*

60. Alternatively, if this Court found Haymaker's allegation that being "a convicted felon from New Jersey" established the requisite basis that the Defendant could not possess a firearm, the Court still finds the matters sworn to by Haymaker in the affidavit of probable cause to be insufficient to conclude that such a weapon could be found within either of the two vehicles.

61. The affidavits of probable cause at Governments Exhibits 1 and 2 mimic each other in their contents except that there is an additional paragraph, numbered 24, in Government Exhibit 2.

62. Paragraph 24 in the affidavit of probable cause at Government Exhibit 2, page five reads: "24.Upon arrival at PSB [Public Safety Building] McCLAIN makes both a spontaneous statement as well as a statement to DET SGT OWENS that she did observe JONES with a handgun on 20 FEB 2007 at approx. 1800 hrs and that McCLAIN instructed JONES to get rid of the gun. McCLAIN also states that the gun may be in the cars."

63. Proceeding with the assumption that the ammunition box within the closet contained ammunition and that the Defendant legally possessed it, this would be relevant to a determination of probable cause that the Defendant possessed a weapon within the residence.

64. The affidavit of probable cause at Government Exhibit 2 indicates that McClain saw the Defendant in possession of a weapon two days prior to the Defendant's arrest, but does not indicate where the Defendant possessed the weapon (*e.g.* in the residence or in one of the vehicles) and that McClain told the Defendant two days prior to execution of the search warrant "to get rid of the gun." Government Exhibit 2 and Conclusion of Law 62.

65. Finally, the affidavit of probable cause at paragraph 24 reads "McCLAIN also states that the gun may be in the cars." *Id.*

66. "To find probable cause to search, there needs to be a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002)(citing *Illinois v. Gates*, 462 U.S. at 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983)).

67. The evidence set forth in the affidavit of probable cause in Government Exhibit 2 reflects a substantial basis only to justify a search of the residence at Rear 810 Central Avenue for any

23

firearms and not the 1991 Acura or the 1998 Ford parked outside of the residence on February 22, 2007.

68. The Court reaches this conclusion based upon the facts set forth by Haymaker in the affidavit of probable cause: he observed the box believed to contain .38 caliber ammunition within the residence, McClain's observing the Defendant in possession of a firearm two days prior to the search (without indicating the location where he possessed it), McClain's remark to the Defendant to"get rid of the gun" and her speculative statement "the gun may be in the cars".

69. There is no factual basis within the affidavit of probable cause at Government Exhibit 2 for McClain's speculative statement that the gun may be present in the cars and the speculative statement itself is the only link within the affidavit of probable cause to potentially place any firearms within either of the vehicles.

70. The facts sworn to can only be consistent with the conclusion that McClain did not see the gun after she told the Defendant to "get rid" of it and that she was speculating that it was moved from a previously unstated location to either of the two vehicles, neither of which she specifies as containing the gun she saw, and thereby drawing into further question why she believed the gun to be located in either of the vehicles.

71. While it is permissible for an affiant to a search warrant to rely upon the statements of another in his attempt to establish probable cause, the statements relied upon in establishing probable cause cannot be "unsupported belief or opinion" and "an affidavit does not establish probable cause if it merely states the affiant's belief that there is a cause to search without stating facts upon which such belief is based." *Weller v. Russell,* 321 F.2d 848, 853-854 (3d Cir. 1963); *see also United States v. Bush*, 647 F.2d 357, 362 (3d Cir. 1981)(affidavit in support of probable cause to search must be based upon facts, "not merely 'the unsupported assertion or belief of the officer.'")(citations omitted).

72. "A search warrant is not issued upon probable cause if the affidavit upon which it is issued merely recites that it is the affiant's 'suspicion' or 'belief' that a crime is being committed, without disclosure of supporting facts or circumstances. *Nathanson v. United States*, 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159 (1933)." *U.S. ex rel. Kislin v. State of N.J.*, 429 F.2d 950, 952 (3d Cir. 1970).

73. It is clear from a commonsense reading of McClain's belief or speculation as set forth in the affidavit that this contributes little to establishing probable cause to believe evidence of a crime was within either of the vehicles; because this is the only link of information within the affidavit

24

alleging a firearm to be within either of the vehicles, it presents an inadequate basis to conclude probable cause exists to search the 1991 Acura or the 1998 Ford.

74.    Therefore, the search warrant at Government Exhibit 2 lacks a substantial basis to conclude that probable cause exists to conclude that fruits of a crime, particularly a firearm possessed by the Defendant, was located within either of the vehicles searched.

75.    Additionally, there is no substantial basis for a finding of probable cause to believe ammunition was within either of the vehicles because McClain did not refer to ammunition in the vehicles and it is only noted in the affidavit as potentially being within the residence; therefore, reference to ammunition in the search warrant at Government Exhibit 2 must be stricken as overbroad.

76.    Therefore, under this alternative analysis the firearms[8] seized from the vehicles must be ordered suppressed and may not be used by the Government in their case-in-chief at the trial in this matter unless the "good faith" exception applies.

77.    The Supreme Court in *United States v. Leon*, 468 U.S. 897, 922-923, 104 S.Ct. 3405, 3420-3421, 82 L.Ed.2d 677, 698-699 (1984) provided for the creation of the "good faith" exception to the exclusionary rule by permitting introduction of evidence otherwise obtained by law enforcement in violation of the Fourth Amendment when the evidence was obtained pursuant to a search warrant for which law enforcement had "objectively" "reasonable grounds" to conclude was legally sufficient.

78.    "The test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate [judge's] authorization.'" *U.S. v. Hodge*, 246 F.3d 301, 307 (3d Cir. 2001).

79.    Typically, issuance of the search warrant presents the existence of good faith for the police officer executing the search. *Id.*

80.    However, the Third Circuit in *United States v. Williams*, 3 F.3d 69, 74 n. 4 (3d Cir. 1993), in following *Leon*, recognized four circumstances under which the law enforcement officer who

---

[8]The word "weapons" is used in the search warrant at Government Exhibit 2. The Court does not reach the issue of whether use of the term "Weapon" is overbroad when the evidence contains only probable cause to search for firearms or if the term "Weapon" if read in a commonsense manner would be restricted to firearms in light of the reference to "ammunition" and 18 Pa.C.S.A. § 6105 within the affidavit of probable cause.

25

obtained a warrant had acted *without* "good faith" reliance on the warrant issued:

> (1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit...;(2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function ...;(3) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"...; or (4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized....

*U.S. v. Williams*, 3 F.3d 69, 74 n. 4 (3d Cir. 1993).

81. At times, appellate courts have proceeded to an analysis of *Leon*'s good faith exception without consideration of a substantial basis for probable cause in a search warrant because the substantial basis analysis for that circumstance provided no instruction for the benefit of law enforcement and magistrates in the future. *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 145 (3d Cir. 2002)(citing *Leon*).

82. A review of precedent from the Court of Appeals for the Third Circuit does not reveal a published matter in which that court has addressed the comparative analysis between the absence of a substantial basis for probable cause and the application of the exception found in the good faith doctrine based upon the absolute lack of indicia of probable cause, but other circuits have addressed it. *See United States v. Bynum*, 293 F.3d 192 (4th Cir. 2002); *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004)(citing *Bynum*).

83. The *Bynum* court recognized that the standard of substantial basis review of a magistrate's finding of probable cause (*i.e.* the analysis just completed by this Court) sets a more rigorous limit of review than a lack of "good faith" review based upon the "good faith" exception that "an officer's affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Bynum* at 195(citation omitted).

84. This Court understands the *Bynum* decision to stand for the conclusion that a finding that a search warrant "is 'so lacking indicia of probable cause....'", thereby preventing the application of the good faith exception also requires a finding that the search warrant lacks a substantial basis for the magistrate's conclusion as to the existence of probable cause, but that a finding of a lack of substantial basis does not require the Court to find the search warrant "is 'so lacking indicia of probable cause".

85. Thus, the standard for a police officer's review of a search warrant and his conclusion as to its legal validity is less rigorous than that of the issuing judicial officer. *See United States v. Williams,* 3 F.3d 69, 74 (3d Cir. 1993)("The district court's analysis of the good faith exception issue calls for a far more sophisticated analysis from law enforcement officers than is required by Supreme Court precedent. This is not a case in which the affidavit contained mere conclusory assertions or a single piece of evidence which the law of the stationhouse shop would recognize as clearly insufficient.")

86. The "law of the stationhouse shop", as Judge Stapleton termed it in *Williams,* is certainly not a demanding review of the affidavit of probable cause imputed to Haymaker in this instance, but it would have been absolutely clear to Haymaker that the affidavit of probable cause at Government Exhibits 1 and 2 did not establish probable cause that the Defendant was prohibited from possessing ammunition pursuant to 18 Pa.C.S.A. § 6105 despite the assistant district attorney's and the magistrate's reviews and approvals and drawing all reasonable inferences in Haymaker's favor to assume the box he viewed contained .38 caliber ammunition.

87. 18 Pa.C.S.A. § 6105 only sets forth one circumstance (an active protection from abuse order) that prohibits possession of *ammunition* as ammunition's existence alone, as opposed to, for instance, cocaine or child pornography, does not inherently make it contraband.

88. As the affidavits of probable cause set forth in Government Exhibits 1 and 2 clearly set forth no basis under 18 Pa.C.S.A. § 6105 to conclude that the Defendant was prohibited from possessing ammunition, and such a defect would have been recognizable not only by the magistrate who issued the warrant, but also Detective Haymaker who drafted the warrants, the Court finds t he "good faith" exception inapplicable in both warrants *in respect to the ammunition* sought to be found and seized as "the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable". *Williams, supra.*

89. The Court must now turn to the application of the "good faith" exception with respect to both warrants as they relate to the search for and seizure of weapons.

90. 18 Pa.C.S.A. § 6105 sets forth several circumstances, mostly convictions for specified crimes that are a prerequisite to prohibiting persons convicted of those crimes from possessing a firearm.

91. Once again, the "law of the stationhouse shop", is certainly not a demanding review of the affidavit of probable cause imputed to Haymaker in this instance and it would *not* have been

absolutely clear to Haymaker that the affidavit of probable cause at Government Exhibits 1 and 2 did not establish probable cause that the Defendant was prohibited from possessing a firearm pursuant to 18 Pa.C.S.A. § 6105 in light of the assistant district attorney's and the magistrate's reviews and approvals and drawing all reasonable inferences in Haymaker's favor to assume the box he viewed contained .38 caliber ammunition.

92. Haymaker swore within the affidavit that the Defendant was "a convicted felon from New Jersey" and this was his basis to conclude that the Defendant was not permitted to possess weapons in accordance with 18 Pa.C.S.A. § 6105 and although this was not a sufficient allegation to present a substantial basis to establish probable cause (a deficiency that should have been observed by the magistrate as well as the reviewing assistant district attorney) it does not reveal such an absence of indicia of probable cause that would cause Haymaker some pause in executing the warrant.

93. It is apparent that Haymaker believed that a felony conviction established the prohibition of possessing firearms in 18 Pa.C.S.A. § 6105, and while this was partially correct, Haymaker did not set forth the name of the offense that resulted in conviction; Haymaker's failure to elaborate on the basis of the felony conviction fails to establish probable cause for a violation of 18 Pa.C.S.A. § 6105, but does not present a void of information or a conclusory statement that would trigger a response from Haymaker that would allow him to conclude that relying upon the warrant to search and seize firearms would be "unreasonable".

94. Additionally, the speculation of McClain set forth in paragraph twenty-four of Government Exhibit 2, the search warrant issued for the two vehicles, would not present Haymaker with a question as to the reasonableness of that warrant: McClain saw the firearm in the Defendant's possession and was a person who could best locate the firearm in light of her observations.

95. McClain's speculation, while not providing probable cause to search either of the vehicles, does not result in such an absence of indicia of probable cause that would cause Haymaker some pause in executing the warrant in light of the magistrate's approval of the warrant.

28

**CONCLUSION**

Detective Haymaker's entry into Rear 810 Central Avenue, Johnstown was legally proper as he possessed two arrest warrants for the Defendant and had a reasonable basis to conclude the Defendant was inside the residence at that address. The contents of the search warrants and their accompanying affidavits of probable cause found at Government Exhibits 1 and 2 do not present a substantial basis for this Court to find that probable cause existed at the time they were approved and executed by the local magistrate. Both affidavits of probable cause failed to establish that the Defendant was prohibited from possessing ammunition and firearms under the applicable Pennsylvania statute, and thereby failed to establish probable cause, as required by the Fourth Amendment to the Constitution, to search the Defendant's residence. The ammunition discovered in the searches of Rear 810 Central Avenue and the 1991 Acura and 1998 Ford must be suppressed absent the application of *Leon's* "good faith" exception. The good faith exception does not apply to Haymaker and Robertson's understanding of the search warrants as to the ammunition as it was obvious that the two search warrants were not based upon probable cause in the search for ammunition. However, the good faith exception does apply to the discovery of the firearms in the two vehicles and these firearms will not be suppressed.

29

**AND NOW**, this 27th day of August, 2008, in consideration of the Defendant's Motion to Suppress Physical Evidence (Document No. 28) and in accordance with the foregoing analysis, IT IS HEREBY ORDERED THAT the Defendant's motion is GRANTED IN PART and DENIED IN PART; IT IS FURTHER ORDERED THAT the ammunition recovered and seized as a result of the execution of the search warrants admitted as Government's Exhibits 1 and 2 is SUPPRESSED from introduction at trial in the Government's case-in-chief, but the firearms recovered as a result of the execution of the same search warrants are ADMISSIBLE at trial in the Government's case-in-chief.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**